IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAWN CHILDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 1:13cv444-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff, Dawn Childs, applied for supplemental social security income in April 2008.  That application was denied.  As a result, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision and found Plaintiff "not disabled" at any time through the date of the decision.  The Appeals Council then granted review and vacated the ALJ's decision.  On July 5, 2011, a different ALJ held another hearing and issued an unfavorable decision. The Appeals Counsel denied Plaintiff's request for review and the ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-two years old at the time of ALJ's decision in 2012 and has a ninth grade education.  Tr. 61.  Plaintiff had past relevant work experience but did not appear to perform any of it at substantial gainful activity levels.  Tr. 40.  Following the administrative hearing, and employing the five-step process, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since . . . the application date."  (Step 1) Tr. 29.  At Step 2, the ALJ found that Plaintiff suffered from the following severe impairments:  "bilateral carpal tunnel syndrome with bilateral surgery, degenerative disc disease, cervical radiculopathy, osteoarthritis in both knees, obesity, vertigo, depression, anxiety, and post-traumatic stress disorder."  *Id*.  At Step 3, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal any listed impairment.  Tr. 30.  Next, the ALJ found that Plaintiff retained the RFC to perform a range of light work with several physical and mental limitations.  Tr. 32.  Following the RFC determination, the ALJ found that Plaintiff could not perform her past relevant work.  (Step 4) Tr. 40.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  *Id*.  The ALJ identified the following occupations as examples: "mail clerk," "garment sorter," "office helper," and "house sitter."  Tr. 41.  Accordingly,

the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since . . . the date the application was filed." *Id.*

## IV.   PLAINTIFF'S CLAIMS

Plaintiff requests the court reverse the ALJ's decision because: (1) "the ALJ's finding that [Plaintiff] is capable of performing the mental demands of unskilled level work is not supported by substantial evidence"; and (2) "the ALJ erred in substituting her own opinion for that of an examining physician's opinion, the only opinion on file from a physician." Pl.'s Br. (Doc. 12) at 5.

## V.   DISCUSSION

### A.   *The ALJ's Mental RFC Assessment*

Plaintiff argues that the ALJ's determination that Plaintiff could perform the mental demands of unskilled work is not supported by substantial evidence. Plaintiff's argument first centers on the opinion of a consultative examiner Dr. Warren's opinion and then focus on the ALJ's rejection of Dr. VanValkenburg's opinion.

Dr. Warren, an examining psychologist, examined Plaintiff in August of 2008. Dr. Warren then opined regarding several mental limitations from which Plaintiff suffers. In the opinion, the ALJ stated that controlling weight was not given to Dr. Warren's opinion "since it is inconsistent with the other objective and opinion findings of record, along with the claimant's own admission to greater functional abilities." Tr. 38. The ALJ then stated that it was notable that Plaintiff had not taken her medication on the day

she was examined by Dr. Warren and denied prior psychiatric treatment and hospitalization.  The ALJ also pointed to Plaintiff's testimony that in 2009 she admitted to performing social tasks without difficulties and to performing activities of daily life that contradict Dr. Warren's opinion regarding any severe limitations "in claimant's ability to remember/carry out instructions, responding appropriately to supervisors/co-workers, and in dealing with work pressures."  *Id*.

Plaintiff takes umbrage with the ALJ's notation that Plaintiff was not on her medication and denied prior psychiatric treatment and hospitalization when examined by Dr. Warren.  Plaintiff insists that it is not "notable" and that Dr. Warren was aware of it and he himself did not find it notable.  The court notes that Dr. Warren did note that Plaintiff denied prior psychiatric treatment and hospitalization and stated that she was not on her medication.  Plaintiff argues that the ALJ is not a physician and "her conclusions regarding the effect of [Plaintiff's] medications . . . fail to establish any valid reasoning for her argument."  Pl.'s Br. (Doc. 12) at 8.  The point is, however, that neither is Dr. Warren a physician and would have no knowledge of the effects of Plaintiff not being on her medication.  The ALJ rightly relied on and evaluated the medical evidence of record in order to make her determination.  Prior to discussing Dr. Warren's opinion, the ALJ outlined the medical evidence of record, wherein Plaintiff admits in 2008 and 2011 that her medication was "helpful in controlling her moods."  Tr. 34.  The ALJ also pointed to Dr. Lopez's findings in 2010 that Plaintiff was doing better, her anger was improved, and

7

she was sleeping well, and that her medications work "ok." *Id*. The ALJ also outlined Dr. Esin's overall findings that Plaintiff was "fully alert, attention span was good, she was goal directed, she did not have suicidal/homicidal thoughts, her affect was appropriate, and her judgment/insight were average," and that Plaintiff was continued on her medication management. *Id*. Dr. Gilliam reported that Plaintiff had run out of her medication, resulting in a relapse, but that after going back on her medication Plaintiff was doing well. Tr. 508. Considering the medical effect of Plaintiff's medication as reflected in the record and the fact that Dr. Warren's opinion was based on a finding of severe depression, the court finds no error with the ALJ's finding of those factors to be "notable."

Next Plaintiff attacks the ALJ's finding that Plaintiff's activities of daily life contradict Dr. Warren's opinion. It is relevant that Dr. Warren's examination and opinion were rendered in August of 2008. The activities of daily living referenced by the ALJ were reported to have taken place in 2009. The activities of daily living reported to Dr. Warren in 2008 were that Plaintiff woke up in the morning, sat on the couch, and usually ate one meal a day. Tr. 148. Plaintiff reported that unless she went to church, she simply slept all day and that her daughter did most of the cooking. *Id*. Dr. Warren then opined that Plaintiff was moderately to severely impaired by her depression.

The evidence of record supports the ALJ's determination to discount Dr. Warren's opinion. The ALJ contrasted Plaintiff's other reports of daily and social activities

including the following: performing the decorating and all the work for her daughter's wedding in March 2009, playing the piano for church; attending church twice a week; doing housework and shopping; taking care of chickens; playing on the computer; watching television; and playing with grandchildren. Tr. 38. Those activities are certainly not consistent with Plaintiff's report to Dr. Warren that she "just sleep[s] all day," and that she does laundry and some cooking. Accordingly, the court finds no error in the ALJ's finding this as a basis to discount Dr. Warren's opinion, especially where the opinion was based on reports of daily activities that are inconsistent with Plaintiff's self-reports and the record as a whole.

    As to Dr. VanVaulkenburg of Southeast Psychiatric Services, the ALJ rejected the treating doctor's opinion assigning Plaintiff a GAF score of 36 and noting that she was "disabled." An ALJ normally must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *See Phillips*, 357 F.3d at 1240. "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. Further, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must

specify what weight is given to a treating physician's opinion and any reason for giving it no weight").

Here, the ALJ did consider Dr. VanVaulkenburg's opinion, and in assigning it no controlling weight, the ALJ gave good cause. Specifically, the ALJ pointed out that Dr. Dr. VanVaulkenburg's opinion was inconsistent with the other objective findings of record, including "other treating doctors' notes from [Southeast Psychiatric Services]" from doctors Lopez and Esin. Tr. 39. The ALJ also pointed to the inconsistencies of Dr. VanVaulkenburg's treatment notes and his finding of a GAF score of 36 and notation of "disabled." *Id*. Plaintiff does not challenge the ALJ's reliance of the other treating sources, or even the ALJ's finding that the treatment notes were inconsistent with the opinion. Rather, Plaintiff attacks the ALJ's finding that it is "notable" that Dr. VanVaulkenburg did not recommend psychiatric inpatient hospitalization despite the GAF score of 36, because the ALJ is not a physician and "the ALJ's reasoning fails to negate [Plaintiff's] claim for disability as psychiatric hospitalization is not required in order for an individual to be disabled." Pl.'s Br. (Doc. 12) at 10. Even were the court to find, which it does not, that the ALJ's notion of Dr. VanVaulkenburg's failure to order impatient hospitalization, despite the low GAF score, was error, the ALJ's rejection of this portion of the opinion would still stand. The ALJ has articulated good cause for discounting Dr. VanVaulkenburg's opinion—that it was inconsistent with the treatment records of Plaintiff's other physicians and the opinion rendered was inconsistent with the

10

treatment notes.  Thus, the court finds that the ALJ's rejection of Dr. VanVaulkenburg's opinion is supported by substantial evidence.

### B. *Dr. King's Opinion*

Next, Plaintiff argues the ALJ erred in rejecting part of the opinion of consultative examiner Dr. King, who completed a medical source statement in 2011.  The ALJ found that while Dr. King's opinion was consistent with less than a full range of light work, the record evidence did not support Dr. King's opinion that Plaintiff could not sit more than 40 minutes at a time, stand and walk only 20 minutes at a time, and never balance or crawl. Thus, the ALJ adopted only part of Dr. King's opinion.  Tr. 36.

Plaintiff appears to argue that the rejection was in error, that the rejection resulted in an incomplete hypothetical, and that "[a]s Dr. King's testimony is the only opinion on file from any physician regarding Ms. Childs' physical limitations, his opinion should have been given great weight."  Pl.'s Br. (Doc 12) at 13.  The court uses the phrase "appears to argue" because this argument section is not quite clear and is interwoven with what appear to be three distinct claims.  As to the rejection of portions of Dr. King's opinion and what weight it was due, Dr. King was a consultative examining physician, rather than a treating physician. Consequently, his opinion was not entitled to controlling weight.  *See* 20 C.F.R. § 416.927(c)(2).  In addition, the ALJ clearly set forth her reasons for rejecting specific portions of the opinion—that it was based on Plaintiff's subjective complaints and was inconsistent with Dr. King's own physical examination findings.  Tr.

11

36. The court has reviewed that determination and finds that it is supported by substantial evidence. Once those portions of the opinion were rejected, "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Moreover, simply because Dr. King's opinion was the "only opinion on file" regarding Plaintiff's physical work limitations does not entitle the opinion to great weight. The record before the ALJ regarding Plaintiff's physical condition included records from the Southeast Alabama Rural Health Associates which covered the period between 2008 and 2010 and those of Dr. Malik from 2011. The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of Plaintiff's residual functional capacity. Thus, she was not required to secure from a medical source a residual functional capacity evaluation. *Moseley v. Colvin*, 2:13CV328-TFM, 2014 WL 1320238, *15 (M.D. Ala. Mar. 31, 2014) (finding no mandatory requirement that an ALJ "secure a residual functional capacity assessment from a medical source."); *see also Holden v. Colvin*, 3:12-CV-899-CSC, 2014 WL 896988, *4 (M.D. Ala. Mar. 6, 2014); *Packer v. Astrue,* 2013 WL 593497, *3 (S.D. Ala. Feb. 14, 2013). Accordingly, the court finds no error.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 21st day of July, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE